# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

TERRA BETTS,          )
    Plaintiff,       )
                  )
v.                 )     CIVIL ACTION NO. 14-00356-CG-N
                  )
CONECUH COUNTY BOARD OF  )
EDUCATION, RONNIE BROGDEN, and )
MARY ANN DANFORD,      )
    Defendants.     )

## REPORT AND RECOMMENDATION

Pending before the Court is the Defendants' "Motion to Dismiss or Alternatively for More Definite Statement " (Doc. 7) brought under Federal Rules of Civil Procedure 12(b)(6) and 12(e). The Plaintiff, Terra Betts ("Betts"), has timely filed a response in opposition (Doc. 12) to the motion, and the Defendants have timely filed a reply (Doc. 13) to the response. The motion is now under submission and is ripe for adjudication. (*See* Doc. 11). The present motion has been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation under 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b)(1). Upon consideration, the undersigned **RECOMMENDS** that the Defendants' "Motion to Dismiss or Alternatively for More Definite Statement " (Doc. 7) be **GRANTED in part** and **DENIED in part**, as set forth herein.

## I. Applicable Legal Standards

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are

alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). " 'To survive ... a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Whether to grant relief under Rule 12(e) is left to the Court's discretion. *See Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 461 (11th Cir. 2010) (per curiam) (unpublished) ("We review for abuse of discretion a district court's grant of a motion for a more definite statement." (citing *Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 131 (5th Cir. 1959)).

## II.    Background

Betts initiated this action on July 31, 2014, by filing a Complaint with the Court alleging claims against Defendants Ronnie Brogden ("Superintendent Brogden"), and Mary Ann Danford, Curriculum Coordinator/Counselor Coordinator for the Conecuh County school system ("Danford"). (*See* Doc. 1). The following well-

pleaded factual allegations in the Complaint are accepted as true for purposes of the

present motion:[1]

> Betts, an African-American, has been employed with the Defendant
> Conecuh County Board of Education ("the Board") for thirteen (13)
> years, having first been hired in 2001. At all times relevant to the
> claims in this action, Betts has been employed in the capacity of
> Guidance Counselor, a position in which she has served for the past
> eight (8) years. Betts has an undergraduate degree from Alabama
> State University (ASU) in Elementary Education, a graduate degree
> (Masters in Counseling) from ASU, and an Ed.S in school counseling
> from ASU/Auburn University Montgomery, jointly. (*Id.* at 3, ¶ 7).

> Defendant Ronnie Brogden ("Superintendent Brogden") is
> superintendent of the Conecuh County school system. Defendant Mary
> Ann Danford ("Danford") is employed with the Conecuh County school
> system in the Central Office in the capacity of Curriculum
> Coordinator/Counselor Coordinator. Danford is not certified in
> counseling. Both Superintendent Brogden and Danford are white. (*Id.*
> at 4, ¶¶ 8-9).

> On or about December 12, 2012, Betts was served with a "Notice of
> Recommendation of Termination of Employment" (hereinafter, the
> "Termination Recommendation Notice") signed by Superintendent
> Brogden. The Termination Recommendation Notice alleged
> "insubordination, incompetency, neglect of duty, failure to perform
> duties in a satisfactory manner, and/or other good and just cause...."
> Betts challenged the recommendation, and after a two day hearing

---

[1] The Supreme Court has stated:

> [A] court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to
> the assumption of truth. While legal conclusions can provide the framework
> of a complaint, they must be supported by factual allegations. When there are
> well-pleaded factual allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

The Defendants have attached to their motion a copy of Betts's Complaint that
highlights certain portions that they deem to be conclusory allegations not entitled to an
assumption of truth. (*See* Doc. 7 at 3-4; Doc. 7-1). The undersigned agrees with the
Defendants' assessment in full and has not accepted the highlighted allegations as true for
purposes of the present motion to dismiss.

commencing on February 12, 2013, Betts was reinstated to her employment. Betts returned to work on February 14, 2013. Though both Danford and Superintendent Brogden testified that they had not undertaken any efforts to replace Betts, Annette Bohannon, who is white, had already moved into Betts's office. (*Id.*, ¶ 10).

Upon her return to work, Betts submitted a correspondence to Superintendent Brogden demanding a work environment at Hillcrest High School free of any acts of retaliation, intimidation and hostility. On or about June 4, 2013, Superintendent Brogden submitted a "Notice of Recommendation of Transfer" (hereinafter, the "Transfer Recommendation Notice") to her and the Board. The Board ratified the recommendation and transferred Betts to Evergreen Elementary School. (*Id.* at 4-5, ¶ 11).

In or about July 2013, Superintendent Brogden filed a complaint with the State of Alabama Department of Education requesting a "proposed revocation and non-renewal of Alabama professional Educator Certificate" against Betts. Superintendent Brogden's request and recommendation tracked verbatim the language of his December 12, 2012 Termination Recommendation Notice. (*Id.* at 5, ¶ 11).

Based on the preceding factual allegations, Betts asserts the following causes of action against the Defendants:

- Count 1 -discriminatory disparate treatment on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"). (*See* Doc. 1 at 5-6).

- Count 2 – unlawful retaliation. (*See id.* at 6-7).

- Count 3 – discrimination on the basis of race and ethnicity "in violation of the Constitution and laws of the United States that secure and guarantee to her the equal protection of the law" –specifically, "[t]he Fourteenth Amendment

to the United States Constitution" – "as enforced by Title 42 U.S.C. §§ 1981 and 1983."[2] [3] (*Id.* at 1, 7-8).

Betts states that Superintendent Brogden "is being sued in his individual capacity relative to [her] §§ 1981 and 1983 claims." (*Id.* at 3, ¶ 6). The Complaint does not specify in what capacit(ies) Betts is suing Superintendent Brogden as to her Title VII claims, or at all for Danford.

### III.   Analysis

In subsection A, *infra*, the undersigned will determine those claims that, regardless of whether they have sufficiently been plead, can be dismissed as a matter of law, as this will narrow the scope of claims that will require a more definite statement, as set forth in subsection B, *infra*.

### A.   Rule 12(b)(6) Dismissal

#### 1.   Title VII Claims against Superintendent Brogden and Danford

The Defendants argue that Betts's Title VII claims against Superintendent Brogden and Danford in Counts One and Two of the Complaint are due to be dismissed because they are not her "employers" within the meaning of Title VII. (*See* Doc. 7 at 9-11). Betts's complaint and her response both expressly acknowledge that, at all relevant times, she was an employee of the Board. (Doc. 1 at 3, ¶ 5; Doc.

---

[2] "The Civil Rights Act of 1866, or Section 1981, guarantees 'all persons ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens,' and it also protects against race-based employment discrimination and retaliation. The Civil Rights Act of 1871, or Section 1983, prohibits state actors from acting in violation of federal law." *Thomas v. Autauga Cnty. Bd. of Educ.*, No. 2:12-CV-971-WKW, 2014 WL 1491199, at *8 (M.D. Ala. Apr. 15, 2014).

[3] Thus, this Court has subject matter jurisdiction over the claims in this action under 28 U.S.C §§ 1331 (federal question) and 1343(a)(3) & (4) (civil rights actions).

12 at 4). Eleventh Circuit precedent is clear "that ' "[t]he relief granted under Title VII is against the employer, not [against] individual employees whose actions would constitute a violation of the Act." ' " *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (per curiam) (quoting *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)). *Accord Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam); *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995). Thus, " '[i]ndividual capacity suits under Title VII are … inappropriate.' " *Cross*, 49 F.3d at 1504 (quoting *Busby*, 931 F.2d at 772) (alteration added). *See also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) ("[B]oth this court and the Fifth Circuit have held that Title VII actions are not appropriately brought against government officials in their personal capacities. Such suits may be brought only against individuals in their official capacity and/or the employing entity.").

"The only proper individual defendants in a Title VII action would be supervisory employees in their capacity as agents of the employer." *Hinson*, 231 F.3d at 827. In her response, Betts admits that her "retaliation claim is a statutory right pursuant to Title VII" and that "[t]he individual defendants are being sued in their individual capacity." (Doc. 12 at 6). Based on the foregoing authority, the undersigned finds that Betts's Title VII claims against Superintendent Brogden and Danford in their individual capacities are due to be **DISMISSED**.

Moreover, the Eleventh Circuit has held that " 'the proper method for a plaintiff to recover under Title VII is by suing the employer, **either** by naming the

supervisory employees as agents of the employer **or** by naming the employer directly.' " *Cross*, 49 F.3d at 1504 (emphasis added) (quoting *Busby*, 931 F.2d at 772). Here, Betts has already asserted Title VII claims against her employer, the Board. Thus, to the extent Superintendent Brogden and Danford are being sued under Title VII in their capacities as agents of the Board, such claims are redundant and due to be **DISMISSED**. *See Shoots v. City of Mobile*, Civil Action No. 11-00673-KD-M, 2013 WL 3281875, at *3 (S.D. Ala. June 28, 2013) (DuBose, J.) ("To the extent Shoots' alleges [Title VII ]claims against the individual defendants in their official capacities…, such claims are redundant as her employer has been named as a defendant." (citing *Cross*, 49 F.3d at 1504; *Portera v. State of Ala. Dep't of Fin.*, 322 F. Supp. 2d 1285, 1287 (M.D. Ala. 2004) ("[A]ny claim against McClenney in his official capacity is redundant since the Finance Department is already a defendant")). *But see Yeldell*, 956 F.2d at 1060 (Title VII "[s]uits may be brought only against individuals in their official capacity **and/or** the employing entity." (emphasis added)).[4]

Thus, the Defendants' motion to dismiss (Doc. 7) is due to be **GRANTED** as to Betts's Title VII claims against Superintendent Brogden and Danford, both individually and as agents of the Board, in Counts One and Two of the Complaint (Doc. 1).

---

[4] Betts appears to be under the mistaken impression that the so-called "cat's paw" theory of liability allows supervisory employees to be held liable in their individual capacities under Title VII. (*See* Doc. 12 at 5-6). However, this "theory of liability, also referred to as 'subordinate bias theory,' is liability seeking to hold an **employer** liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 n.6 (11th Cir. 2013) (emphasis added) (citing *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1190 (2011)).

## 2.    **Retaliation**

Count Two does not specify under what provision(s) Betts brings her claims of retaliation.  The Defendants, noting this ambiguity in Count Two, "assume this claim is brought under Title VII, because a claim for retaliation cannot be brought under the equal protection clause."  (Doc. 7 at 10 n.3).  The undersigned construes this as a request for dismissal of any claim for retaliation not based on Title VII.

"Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012) (citing 42 U.S.C. § 2000e–3(a); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (concluding that § 1981 encompasses retaliation claims); *Bryant v. Jones*, 575 F.3d 1281, 1301 (11th Cir. 2009) (discussing the right of action for retaliation under § 1981 both pre- and post-*Humphries* )).  Moreover, "the elements required to establish retaliation claims under § 1981 are the same as those required for retaliation claims under Title VII." *Word v. AT & T*, 576 F. App'x 908, 912 (11th Cir. 2014) (unpublished) (per curiam) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008)).

However, "[s]ection 1981 does not provide a cause of action against state actors; instead, claims against state actors or [sic] allegations of § 1981 violations must be brought pursuant to § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) (citing *Butts v. County of Volusia*, 222 F.3d 891, 892–94 (11th Cir. 2000)).  *Accord Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) ("We have held that § 1981 does not provide an implicit cause of action against state

actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981."); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1273 n.3 (11th Cir. 2008).

> "The traditional definition of acting under color of state law requires that the defendant in a [section] 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941)). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001), or when "the manner of his conduct ... makes clear that he was asserting the authority granted him and not acting in the role of a private person," *Williams v. United States*, 341 U.S. 97, 100, 71 S. Ct. 576, 578, 95 L. Ed. 774 (1951). "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir.1995).

*Myers v. Bowman*, 713 F.3d 1319, 1329-30 (11th Cir. 2013).

Betts does not dispute that the Board is "a governmental entity." (Doc. 12 at 6). *See also Jaffree v. Wallace*, 705 F.2d 1526, 1533 (11th Cir. 1983) ("The Alabama county school boards are creatures of the state and are controlled by the state."); *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1511 n.7 (11th Cir. 1990) ("[O]ur comment in *Jaffree* was with regard to whether or not the school systems could be considered state actors."). Thus, the undersigned finds that the Board is a state actor for purposes of §§ 1981 and 1983.[5] Moreover, the allegations in the

---

[5] Recently the Eleventh Circuit, reaffirming as binding precedent its opinion in *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499 (11th Cir. 1990), held "that local school boards in Alabama are not arms of the state" with respect to "employment-related decisions (i.e., hiring, assignment, and compensation)" for purposes of Eleventh Amendment immunity. *Walker v. Jefferson Cnty. Bd. of Educ.*, --- F.3d ----, No. 13-14182, 2014 WL 5575607, at *1, 7

Complaint make clear that at all relevant times, Superintendent Brogden and Danford were acting "under color of state law" as employees of the Board, thus making them "state actors" for purposes of §§ 1981 and 1983. Therefore, Betts's § 1981 claims against the Defendants, including her § 1981 retaliation claims, are merged into her § 1983 claims. *See Busby*, 931 F.2d at 771 n.6 (11th Cir. 1991) ("The section 1981 claim has been effectively merged into the section 1983 claim for racial discrimination. This occurs because the the [sic] express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." (quotations omitted)); *Rioux*, 520 F.3d at 1273 ("The First Complaint alleged a first count under 42 U.S.C. § 1981 against the City and Young, and this count was merged into Rioux's section 1983 claim stated in count two."); *Parker v. Chilton Cnty. Bd. of Educ.*, No. 2:12-CV-0650-MEF, 2014 WL 116341, at *6 n.6 (M.D. Ala. Jan. 13, 2014) ("Section 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981. *See Bryant v. Jones,* 575 F.3d 1281, 1288 n.1 (11th Cir. 2009). Therefore, Parker's § 1981 and § 1983 claims[ against the defendant Alabama school board] merge. *See Fason v. City of Montgomery,* 240 F.3d, 905, 906 (11th Cir. 2001)."); *Adams v. Cobb Cnty. Sch. Dist.*, 242 F. App'x 616, 620 n.6 (11th Cir. 2007) (per curiam)

---

(11th Cir. Nov. 4, 2014). However, the determination of whether a defendant is considered a state actor for purposes of §§ 1981 and 1983 "is completely separate from and has no independent bearing on a determination as to whether a county defendant is a state defendant for purposes of the Eleventh Amendment" *Stewart*, 908 F.2d at 1511 n.7.

(unpublished) ("The basis of Adams's § 1983 retaliation claim is an alleged violation of § 1981, which itself prohibits an employer from retaliating against its employee as a response to the employee's complaint of race-based discrimination. Because Adams has sued the District, a state-created entity, § 1983 serves as the exclusive vehicle through which Adams must pursue his § 1981–based retaliation claim." (citations omitted)); *Braswell v. Allen*, 586 F. Supp. 2d 1297, 1310 (M.D. Ala. 2008) ("Section 1983 is the vehicle through which plaintiffs must pursue a section 1981 retaliation claim.").

Acknowledging "the great confusion that so often surrounds claims and defenses involving personal capacity and official capacity liability," the Eleventh Circuit has provided the following "brief description of the differences between personal capacity and official capacity lawsuits":

> "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " [*Kentucky v. Graham*, 473 U.S. 159,] 165-66, 105 S. Ct. [3099,] 3105[ (1985)] (citations omitted) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55-56 L. Ed. 2d 611 (1978)). In other words, a plaintiff in an action against a government official in his personal capacity can recover only against the official's personal assets. The assets of the governmental entity are not accessible. The reverse is true in an official capacity lawsuit. Furthermore, "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... [I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* 473 U.S. at 166, 105 S. Ct. at 3105 (citations omitted).

*Yeldell*, 956 F.2d at 1060.

Again, because Betts is already alleging § 1983 claims against the Board, to the extent Betts is suing Superintendent Brogden and Danford in their official capacities under §§ 1981 and 1983, such claims are due to be **DISMISSED** as redundant.[6]

Section 1983 itself also provides a cause of action for retaliation. *See generally, e.g.*, *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005). However, the Defendants are correct that a claim for retaliation under § 1983 cannot be brought under the equal protection clause. *See Watkins v. Bowden*, 105 F.3d 1344, 1354-55 (11th Cir. 1997) (per curiam) (affirming district court's grant of a directed verdict for defendants on plaintiff's equal protection retaliation claim under § 1983 because "[a] pure or generic retaliation claim…simply does not implicate the Equal Protection Clause." (citing, *inter alia*, *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340 (11th Cir. 1995)); *Owens v. Jackson Cnty. Bd. of Educ.*, 561 F. App'x 846, 848 (11th Cir. 2014) (unpublished) ("Harding contends that the district court erred by denying summary judgment on Owens' Fourteenth Amendment retaliation claim. This Court has held that a claim of gender-based retaliation 'simply does not implicate

---

[6] *See Busby*, 931 F.2d at 776 ("In Busby's action against the City of Orlando, the district court recognized that the intended defendant was actually the City. To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury. We therefore AFFIRM the district court's decision to grant a directed verdict in favor of Walsh, Mays, Paden, and Noble as officially named defendants, because the City of Orlando remained as a defendant."); *M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty.*, Civil Action No. 11-0245-WS-C, 2012 WL 2931263, at *2 & n.5 (S.D. Ala. July 18, 2012) (Steele, C.J.) ("[C]ourts in this Circuit routinely and overwhelmingly deem suits against both a local government official in his official capacity and the entity of which the officer is an agent to be redundant, and dismiss the official-capacity claims against the individual defendant on that basis.").

the Equal Protection Clause.' " As a result, Harding is entitled to summary judgment on Owens' retaliation claim." (quoting *Watkins*, 105 F.3d at 1354) (internal citations omitted))). "The right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation." *Ratliff*, 62 F.3d at 340. *See also Bennett*, 423 F.3d at 1250 ("To state a[ § 1983] retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."). Betts's Complaint specifically references the "Fourteenth Amendment" and "equal protection" multiple times (*see* Doc. 1 at 1, ¶ 1; 7-8), but the First Amendment, "freedom of speech," etc., are never referenced. Thus, to the extent Betts alleges claims of retaliation based solely on § 1983, such claims are due to be **DISMISSED**.

For the foregoing reasons, the undersigned finds as follows:

1. To the extent Betts alleges causes of action for retaliation based solely on § 1983 (as opposed to a claim of retaliation under § 1981 by way of § 1983) in Count 2, the Defendants' motion to dismiss is due to be **GRANTED** as to those claims.

2. Though the Defendants have not expressly moved for such relief, to the extent Betts asserts claims under §§ 1981 and 1983 against Superintendent

Brogden and Danford in their _official_ capacities, such claims are due to be **DISMISSED** as redundant of her claims under §§ 1981 and 1983 against the Board.

3. To the extent Betts asserts claims of retaliation under § 1981, by way of § 1983, against the Board and against Superintendent Brogden and Danford in their _individual_ capacities, the Defendants' motion to dismiss is due to be **DENIED**.

### 3. Punitive Damages

The Defendants argue that Betts's demands for punitive damages in all three Counts are due to be dismissed because "[p]unitive damages are not available against government entities, including school boards." (_See_ Doc. 7 at 11). Betts acknowledges "that punitive damages may not be awarded on the plaintiff's claim against a governmental entity such as a school board" but argues that "nothing prohibits that same against individual defendants." (Doc. 12 at 6).

Per the undersigned's previous recommendation, _see supra_, Betts's Title VII claims are asserted solely against the Board. The undersigned agrees that punitive damages are not available against the Board, a government agency, for Betts's Title VII claims.

> The Civil Rights Act of 1991 allows a Title VII plaintiff to recover punitive damages in certain circumstances; however, it expressly precludes recovery of punitive damages from governments, government agencies, and political subdivisions. 42 U.S.C. § 1981a(b); _see also Alexander v. Fulton County, Ga.,_ 207 F.3d 1303, 1322 (11th Cir. 2000), _overruled on other grounds by Manders v. Lee,_ 338 F.3d 1304 (11th Cir.2003); _see also McGriff v. Decatur County Sheriff's Office,_ 2005 U.S. Dist. LEXIS 16866, at * 2 (M.D. Ga. Aug. 9, 2005) ("Title VII plaintiffs

> may not recover punitive damages against governments and government agencies or political subdivisions."); *Walker v. H. Councill Trenholm State Tech. Coll.,* 2006 U.S. Dist. LEXIS 60066, at *5 (M.D. Ala. Aug. 23, 2006) ("Title VII disallows punitive damage awards against the government or a governmental agency.").

*Freeman v. City of Riverdale*, No. 1:06CV 2230WSD LTW, 2007 WL 1129004, at *2 (N.D. Ga. Apr. 16, 2007). *Accord Young v. City of Mobile*, Civil Action No. 13-0586-KD-B, 2014 WL 2739422, at *2 (S.D. Ala. June 17, 2014) (DuBose, J.) ("As to his claim pursuant to...Title VII, 42 U.S.C. § 1981a(b)(1) precludes an award of punitive damages against a 'government, government agency or political subdivision.' "). Thus, the undersigned finds that Betts's claims for punitive damages under Title VII against the Board are due to be **DISMISSED**.

"Punitive damages are of course available under 42 U.S.C. §§ 1981 and 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) (quotation omitted). First, as explained *supra*, because all Defendants are deemed state actors, Betts's § 1981 claims have merged into her § 1983 claims, and "§ 1983 constitutes the exclusive federal remedy for violation by [the Defendants] of the rights guaranteed under § 1981." *Bryant*, 575 F.3d at 1288 n.1. *See also Busby*, 931 F.2d 764, 771 (11th Cir. 1991) (" '[T]he express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a

15

state actor.' " (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (holding that section 1981 can provide no broader remedy against a state actor than section 1983)).

The Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Though the Eleventh Circuit Court of Appeals has not directly addressed the issue, district courts in this Circuit have extended the holding in *City of Newport* to include school boards, including, as here, Alabama county school boards. *See Kubany v. Sch. Bd. of Pinellas Cnty.*, 839 F. Supp. 1544, 1551 (M.D. Fla. 1993) ("On the issue of damages, as Defendant School Board points out, punitive damages are not available under § 1983 from a governmental entity." (citing *Kentucky v. Graham*, 473 U.S. at 167 n.13; *City of Newport v*, 453 U.S. 247)); *Garrett v. Clarke Cnty. Bd. of Educ.*, 857 F. Supp. 949, 953 (S.D. Ala. 1994) (Hand, J.) ("Punitive damages are not available under § 1983 from a governmental entity. Accordingly, the plaintiff's claims for punitive damages against the Board, and against the Superintendents in their official capacities, under § 1983 are due to be dismissed with prejudice." (citing, *inter alia*, *Kubany*, *Graham*, and *City of Newport*) (internal citations omitted)).[7] *Cf. Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th

---

[7] *See also Brown v. Baldwin Union Free Sch. Dist.*, 603 F. Supp. 2d 509, 518-19 & nn. 8-9 (E.D.N.Y. 2009) ("Title VII, § 1981, and § 1983 do not provide for punitive damages against municipalities, leaving only the question of whether a school district and its board of education are municipal entities for purposes of immunity from punitive damages. Although neither the Supreme Court nor the Second Circuit has answered that question directly, this Court concurs with the many district courts that have all reached a single conclusion on the question—school districts and boards of education are municipal entities

Cir. 1995) (finding that "*Newport*'s reasoning applies equally to a [Florida ]Sheriff's Department, thus barring a punitive damage award against Sheriff[] in his official capacity"). Given that Betts does not contest dismissal of her request for punitive damages against the Board, *see supra*, the undersigned finds that Betts's claims for punitive damages under § 1983 against the Board are due to be **DISMISSED**.

"In a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities." *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047 (11th Cir. 2008). *See also Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985) ("[P]unitive damages…are available in a suit against an official personally" under § 1983). Though, the undersigned has already recommended that Betts's official-capacity § 1983 claims against Superintendent Brogden and Danford are due to be dismissed as redundant, s*ee supra*, in the interest of covering all bases, to the extent Betts requests punitive damages for those claims, the Defendants' motion to dismiss is due to be **GRANTED** as to this request.

Thus, the undersigned finds that the Defendants' motion to dismiss is due to be **GRANTED** as to Betts's claim for punitive damages against the Board on all claims and against Superintendent Brogden and Danford in their official capacities. The motion is due to be **DENIED**, however, as to any request for punitive damages under § 1983 against Superintendent Brogden and Danford in their individual capacities.

---

immune from punitive damages under Title VII, § 1981, and § 1983." (footnote omitted) (citing cases, including *Garrett*)).

## 4.  Declaratory and Injunctive Relief

In the first section of her Complaint, describing the general "nature of the action," Betts requests, *inter alia*, a declaratory judgment, pursuant to the provisions of Title 28 U.S.C. § 2201, declaring the rights and relations of the parties…" (Doc. 1 at 1, ¶ 1).   Also, in Count 2, Betts requests "declaratory and injunctive relief" in addition to monetary damages.  (*Id.* at 7, ¶ 24).  The Defendants move for dismissal of hers claims for declaratory and injunctive relief, arguing that Betts "does not say what she wants to be declared, or what or whom she wants to be enjoined" and that "[t]his statement is too vague for the Defendants to make any response to it…" (Doc. 7 at 12).

"[I]n an employment discrimination suit brought, as here, under Title VII and § 1981, a plaintiff can obtain…declaratory and injunctive relief under both statutes…" *Davis*, 516 F.3d at 965 n.18.  Such relief may also be available under § 1983.  However, the undersigned rejects the Defendants' contention that Betts is required to plead the declaratory and injunctive relief she seeks with specificity.  In fact, the Eleventh Circuit, albeit in an unpublished decision, has held that a "district court should not…den[y] declaratory and injunctive relief" under Title VII even where a plaintiff has "failed to specifically request such relief in his complaint" at all, noting: "Under…Title VII, the district court has broad discretion in fashioning relief to achieve the broad purposes of the Civil Rights Act and has authority to award appropriate relief dictated by evidence, 'even though it may not have been sought in pleadings.' "  *Carter v. Diamondback Golf Club, Inc.*, 222 F.

App'x 929, 931 (11th Cir. 2007) (per curiam) (quoting *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir. 1980)).  *See also Rivers v. Washington Cnty. Bd. of Educ.*, 770 F.2d 1010, 1012 (11th Cir. 1985) (per curiam) ("The district court has broad, equitable discretion to grant any equitable relief it deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination.").

What, if any, injunctive and/or declaratory relief Betts is entitled to depends on the ultimate outcome of this case and need not be specified in detail (or indeed, at all) in the pleading stage.  *See Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1444 (11th Cir. 1997) ("Injunctive or declaratory relief may not be available in a given case…, but it will be available in some situations.").  Thus, the Defendants' motion to dismiss is due to be **DENIED** as to Betts's claims for injunctive and declaratory relief.

### 5.    "Individual Members" of the Board

The Defendants note with some concern that paragraph 19 of the Complaint, located in Count 2 (Retaliation), states: "The Defendant Conecuh County Board of Education **and its individual members as alleged herein** rubber stamped and approved the discriminator actions of the superintendent."  (Doc. 1 at 7, ¶ 19).  As the Defendants correctly point out, the individual members of the Board "have not previously been identified as defendants."  (Doc. 7 at 11 n.4).  To the extent the Board members are being sued in their official capacities and as agents of the Board, such claims are redundant of Betts's claims against the Board itself and are

due to be **DISMISSED**. To the extent the Board members are being sued in their individual capacities under Title VII, such claims are also due to be **DISMISSED**. To the extent Betts alleges a claim of retaliation against the Board members in their individual capacities under § 1981 by way of § 1983, the Board members individually have neither been properly served nor listed in the title of the complaint, *see* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties…") and thus are currently not considered parties to this action.[8]

### B. Rule 12(e) More Definite Statement

Should the District Judge adopt all of the recommendations made in Section III.A., *supra*, the following causes of action will remain, thus narrowing the scope of claims that may require a more definite statement:

---

[8] Moreover, Betts's one passing reference to the "individual members" of the Board is insufficient to put them on notice that they are being sued in their individual capacities. *Cf. Colvin v. McDougall*, 62 F.3d 1316, 1317 (11th Cir. 1995):

> In trying to determine in what capacity Sheriff McDougall was sued, we look at the complaint and the course of proceedings. *See Kentucky v. Graham*, 473 U.S. 159, 167–68 n.14, 105 S. Ct. 3099, 3106 n.14, 87 L. Ed. 2d 114 (1985). In this case, the caption of the complaint lists as a defendant, "John J. McDougall, as Sheriff of the Lee County " (emphasis added). This style suggests that McDougall was sued in his official capacity, as the Sheriff, not as an individual. McDougall is mentioned by name in the complaint only three times. Each time, McDougall is referred to as follows:
>
> > The defendant, John J. McDougall, is and was at all times material hereto, the Sheriff of Lee County, Florida, an agent for both the Lee County Board of Commissioners, and the Lee County Sheriff's Department. Defendant John J. McDougall was elected, duly appointed, employed and acting as Sheriff of the County of Lee, a municipal corporation and governmental subdivision of the State of Florida at all times material hereto.
>
> This kind of pleading looks like an official capacity suit.

- Count 1 (against the Board only) – discriminatory disparate treatment on the basis of race, in violation of Title VII. No punitive damages available.

- Count 2 – 1) unlawful retaliation under Title VII against the Board only, and 2) unlawful retaliation under § 1981 (by way of § 1983) against the Board and against Superintendent Brogden and Danford in their individual capacities. Punitive damages available only against Superintendent Brogden and Danford in their individual capacities.

- Count 3 – claims against the Board and against Superintendent Brogden and Danford in their individual capacities for discrimination on the basis of race and ethnicity "in violation of the Constitution and laws of the United States that secure and guarantee to her the equal protection of the law" – specifically, "[t]he Fourteenth Amendment to the United States Constitution" – "as enforced by Title 42 U.S.C. §§ 1981 and 1983." (*Id.* at 1, 7-8). Punitive damages available only against Superintendent Brogden and Danford in their individual capacities.

The Defendants move for dismissal of the Complaint (Doc. 1) in general under Rule 12(b)(6), or alternatively for a more definite statement under Rule 12(e), because it is a "proverbial shotgun pleading," as it "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief . . ." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). *See also, e.g., Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one

incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous."); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("Anderson's complaint is a perfect example of 'shotgun' pleading, in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." (internal citation omitted)); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam) ("Each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'…while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts…"). The Complaint is also "shotgun" in nature because "all defendants are charged in each count[,]" and "[t]he complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the []defendants charged…" *Magluta*, 256 F.3d at 1284.

In this Circuit, "shotgun pleadings" have "been roundly, repeatedly, and consistently condemn[ed] for years, long before this lawsuit was filed." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008). *See also,*

*e.g.*, *id.* at 981-84 (discussing at length the "unacceptable consequences of shotgun pleading"); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125-28 (11th Cir. 2014) (discussing "the persistence of the shotgun pleading problem"); *Wagner*, 464 F.3d at 1279 (" '[S]hotgun pleadings wreak havoc on the judicial system.' *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001). Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently."). A Rule 12(b)(6) motion to dismiss and a Rule 12(e) motion for more definite statement are appropriate responses to a shotgun pleading. *See Paylor*, 748 F.3d at 1126-27 ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer." (footnotes omitted)); *Davis*, 516 F.3d at 983-84 ("[D]efense counsel, faced with a ["shotgun" ]complaint…, should have moved the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e)."); *Anderson*, 77 F.3d at 366 ("Under the Federal Rules of Civil Procedure, a defendant faced with a ["shotgun" ]complaint…is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement.").[9]

---

[9] Even where a Rule 12(e) motion is not filed, the Eleventh Circuit has suggested that a district court should order repleading *sua sponte* when faced with a "shotgun" pleading. *See Davis*, 516 F.3d at 984 ("In light of defense counsel's failure to request a repleader, 'the court, acting sua sponte, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.' " (quoting *Anderson*, 77 F.3d at 367 n.5)); *Paylor*, 748 F.3d at 1127 (same); *Ferrell v. Durbin*, 311 F.

Though certainly not the most egregious example of "shotgun" pleading,[10] Betts's Complaint, as drafted, still creates confusion. On a general level, the Defendants are correct that the allegations in the counts themselves are only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" to state plausible claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Betts does make factual allegations preceding her claims for relief, by simply alleging each claim against unspecified "defendants" and incorporating all antecedent allegations into each count, Betts has made it, if not "virtually impossible[,]" at the very least difficult "to know which allegations of fact are intended to support which claim(s) for relief." *Paylor*, 748 F.3d at 1126 (quotation omitted). Thus, the Defendants – and the Court – are left to guess as to which allegations are relevant to each claim against each Defendant.

As to more specific examples of the confusion caused by Betts's "shotgun" pleading, Count 1, alleging a cause of action for "employment discrimination" under "Title VII," appears to allege only a claim for disparate treatment. *See* (Doc. 1 at 6,

---

App'x 253, 259 n.8 (11th Cir. 2009) (per curiam) (unpublished) ("When presented with a shotgun complaint, the district court should order repleading *sua sponte*." (citing *Wagner*, 464 F.3d at 1280)); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) ("We recognize the time pressures that the federal district courts face because of crowded dockets; it is much easier in the short term to permit shotgun pleadings—in the hope that the parties will settle their dispute—instead of intervening *sua sponte* to narrow the issues. In the long term, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined. As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation.").

[10] *Cf., e.g.*, *Strategic Income Fund*, 305 F.3d at 1295-96 ("shotgun" complaint contained "127 paragraphs…and nine counts, with each count incorporating by reference every paragraph that precedes it"); *Magluta*, 256 F.3d at 1284 ("shotgun" complaint was "fifty-eight pages long[,]…name[d] fourteen defendants, and all defendants [were] charged in each count").

¶ 15 ("[S]he has been discriminated against by the defendants and treated differently than other employees because of their race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. This treatment by the defendant has affected the terms and conditions of the plaintiff's employment, resulting in her transfer, proposed termination and the filing of charges proposing the revocation of her Alabama Professional Certificate.")). Count 3, alleging a cause of action under §§ 1981 and 1983, simply alleges that Betts has "been discriminated against by the defendants and treated differently than other employees because of her race and ethnicity[,]" again suggesting a claim only for disparate treatment. (*Id.* at 8, ¶ 25). However, both counts also adopt and incorporate all antecedent allegations "as if the same were fully set forth" therein. (*Id.* at 6-8). In paragraphs 9 and 14, antecedent to both counts, Betts claims that she has been subject to, *inter alia*, a "hostile work environment." (*Id.* at 4-5). As such, it is unclear whether Betts is alleging claims for hostile work environment under Title VII and/or §§ 1981 and 1983.

Another example of confusion is Betts's inclusion of Danford with the other "defendants" on her claim of retaliation in Count 2 for "having successfully defended the Superintendent's proposed termination of her employment…" (Doc. 1 at 7, ¶ 19). In her allegations of fact, only Superintendent Brogden and the Board are alleged to have taken retaliatory action against Betts following her reinstatement – i.e. Superintendent Brogden's recommendation of transfer, adopted by the Board, and Brogden's complaint for revocation of Betts's teaching certificate. (*Id.* at 4-5).

By simply lumping Danford with the other defendants in this count, she has attempted to assert a cause of action against Danford based solely on the actions of others.[11]

"Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading." *Id.* at 1127. Given the Eleventh Circuit's explicit and repeated condemnation of "shotgun" pleading, the examples of confusion noted above, and the recommended dismissal of a number of Betts's claims, *see supra*, the undersigned finds that repleader under Rule 12(e) is due in order for Betts to clarify her causes of action and prevent this case from devolving into a "discovery goat rodeo[.]" *Paylor*, 748 F.3d at 1127.[12]

Accordingly, the undersigned finds that the Defendants' Rule 12(e) motion for more definite statement is due to be **GRANTED** and that their Rule 12(b)(6) motion

---

[11] Count 2 also claims that Betts was retaliated against for "having filed a Charge of Discrimination with the Equal Employment Opportunity Commission." (Doc. 1 at 7, ¶ 19). However, the Complaint contains no allegation stating when this charge was filed or when any of the Defendants were made aware of it. As such, it is impossible for the Court to determine whether a plausible claim for retaliation has been alleged on this basis.

[12] While the Defendants make some mention of dismissal under Rule 12(b)(6) being warranted for failure to meet the *Twombly-Iqbal* standard of pleading, no specific argument is made on this issue, and the undersigned finds repleading under Rule 12(e) to be the more appropriate course of action at this point in the litigation. *Cf. Wagner*, 464 F.3d at 1280 ("[W]e disagree that dismissal was the appropriate course of action for the district court to take at this juncture in the litigation. As the district court concluded, 'the problem was not that Plaintiffs did not allege enough facts, or failed to recite magic words; the problem lay in the fact that while Plaintiffs introduced a great deal of factual allegations, the amended complaint did not clearly link any of those facts to its causes of action.' We disagree with the dismissal of this case because these observations sound more clearly in Rule 12(e)'s remedy of ordering repleading for a more definite statement of the claim, rather than in Rule 12(b)(6)'s remedy of dismissal for failure to state a claim. In fact, the court noted that there was 'no repeated failure on Plaintiffs['] part to draft a conforming complaint.' " (internal citation omitted)).

to dismiss be **DENIED** except as otherwise noted above.  The undersigned **RECOMMENDS** that Betts be required to adhere to the following standards in repleading her complaint:

1. Betts shall omit mention of any claim that is dismissed by the Court's Order addressing this Report and Recommendation.

2. She shall refrain from incorporating multiple causes of action into one count, as well as from the wholesale adoption by reference of all antecedent allegations into each subsequent cause of action.  Instead, she must list each discrete cause of action (e.g., "disparate impact under Title VII," "hostile work environment under Title VII," "retaliation under § 1981") in a separate count and identify with specificity the factual allegations used to support each discrete claim against each individual Defendant. [13]

3. In being ordered to replead under Rule 12(e), Betts is not being granted leave to amend her complaint under Federal Rule of Civil Procedure 15(a)(2).  Thus, she shall not use this as an opportunity to add new claims and/or parties which are not apparent from the allegations in her initial Complaint (Doc. 1).  *Cf. Washington v. Util. Trailer Mfg. Co.*, No. 1:13-CV-610-WEF,

---

[13] Though Betts invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, in the opening of her Complaint, she does not assert a separate cause of action under it, and from the allegations in her Complaint it appears that she seeks a "declaratory judgment" only as one of several forms of relief on her Title VII, § 1981, and § 1983 actions.

Should the Court adopt the recommendation that Betts be ordered to replead under Rule 12(e), Betts shall set forth a discrete count asserting a cause of action under the Declaratory Judgment Act if she indeed wishes to do so.  Otherwise, she shall omit reference to the Declaratory Judgment Act on repleader.

2014 WL 2831189, at *5 n.5 (M.D. Ala. June 23, 2014) ("Plaintiffs may not use this order to re-plead Count I as an opportunity to add new claims.").

## IV.    Conclusion

In accordance with the above-stated analysis, the undersigned **RECOMMENDS** as follows:

1. The Defendants' Rule 12(b)(6) (Doc. 7) should be **GRANTED** as to the following claims and **DENIED** in all other respects:

   • Betts's Title VII claims against Superintendent Brogden and Danford, both individually and as agents of the Board.

   • Betts's claims for retaliation brought solely under § 1983.

   • Betts's claims for punitive damages under both Title VII and § 1983 against the Board, and for punitive damages under §§ 1981 and 1983 against Superintendent Brogden and Danford in their official capacities.

2. Betts's § 1983 claims (including her merged § 1981 claims) against Superintendent Brogden and Danford in their official capacities should be **DISMISSED** *sua sponte* as redundant.

3. The Defendants' Rule 12(e) motion for more definite statement should be **GRANTED**, with Betts required to replead as set out in Section III.B., *supra*.[14]

## V.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the

_____

[14] "If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any appropriate order."  Fed. R. Civ. P. 12(e).

manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this the **10th** day of **December 2014**.

 */s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**